## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ANTHONY COLUCCI and VANESSA
LORRAINE SKIPPER

     Plaintiffs,

                               Case No. 6:21-cv-681-RBD-GJK

v.

HEALTH FIRST, INC.,

     Defendant.

_____

### PLAINTIFFS' RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

Plaintiffs Anthony Colucci and Vanessa Lorraine Skipper (collectively "Plaintiffs") oppose Defendant Health First, Inc.'s ("Health First") Motion for Rule 11 Sanctions (Doc. 176).

### INTRODUCTION

Health First's Motion for Rule 11 Sanctions ("Rule 11 Motion") should be denied. It is both procedurally defective and substantively wrong. While Health First seeks an unspecified award of attorneys' fees, it has provided no evidence of: (1) the amount of the claimed fees; (2) the reasonableness of the work reflected in such fees; (3) the reasonableness of the hourly rates used to calculate such fees; or (4) how such fees are related to the claimed Rule 11 violations. This is all information uniquely in the possession of the same counsel for Health First who filed the motion. This Court requires this information and more before awarding attorneys' fees as sanctions under

Rule 11. *See Walther v. McIntosh*, No. 6:13-cv-472-Orl-37GJK, 2013 WL 5532683, *4 (M.D. Fla. Oct. 5, 2013) (Dalton, J.) (in a Rule 11 motion, "[t]he movant bears the burden of establishing reasonableness" of attorneys' fees, which requires specified information).

Even if the Rule 11 Motion should be considered despite this lack of evidentiary support, Health First has failed to show that Plaintiffs made any sanctionable factual statements or legal contentions regarding Mr. Colucci and Ms. Skipper, including their status as class representations. While the Court ultimately denied class certification for lack of standing by Mr. Colucci and Ms. Skipper, it was for a different reason than what Health First asserts as the Rule 11 violation.

Viewing the record of this litigation as a whole, at most Plaintiffs can be faulted for: (1) using imprecise or ambiguous language in their complaints, motion for class certification, and discovery requests and correspondence; and (2) failing to clarify such language prior to the Court's deadline for amending their complaint. While these flaws may have justified denial of class certification and denial of leave to amend, they fall far short of the demanding standard to impose sanctions under Rule 11, especially where, as here, these faults are not the basis of the Rule 11 Motion.

## I.   PROCEDURAL HISTORY

Health First's Rule 11 Motion arises from a putative antitrust class action challenging a long-running scheme by Health First to monopolize the market for acute care services in Brevard County. Plaintiffs sought to represent a class of patients and health care payors, including health plans and self-funded groups, who paid

supracompetitive prices for acute care services from Health First hospitals from April 19, 2017, to the time of trial. Plaintiffs also sought injunctive relief that would have resulted in more affordable acute care services for residents of Brevard County.

Plaintiffs filed their class action complaint on April 19, 2021 (Doc. 1) and their amended complaint on April 27, 2021 (Doc. 13). Plaintiffs' claims have twice survived motions to dismiss. On August 12, 2021, the Court mostly denied Health First's motion to dismiss Plaintiffs' first amended complaint, ruling that Plaintiffs sufficiently alleged violations of (1) Section 1 of the Sherman Act (exclusive dealing); (2) Section 2 of the Sherman Act (monopolization); and (3) the Florida Antitrust Act, Fla. Stat. § 542.19 (monopolization) (Doc. 48).

While the Court ruled that Plaintiffs did not allege sufficient facts to state a claim for an unlawful market division between Health First and Adventist, Plaintiffs filed a second amended complaint on August 25, 2021, adding additional allegations about the Health First-Adventist agreement, as well as a claim that Health First violated Section 7 of the Clayton Act, 15 U.S.C. § 18 (Doc. 53). On January 25, 2022, the Court denied Health First's motion to dismiss the horizontal market division claim but granted the motion to dismiss the Clayton Act claim (Doc. 82).

Plaintiffs' claims are similar to those brought in *Omni Healthcare Inc. v. Health First, Inc.*, No. 6:13-cv-Orl-37DAB. In that case, competitors of HF Physicians sought to recover damages due to Health First's alleged anticompetitive conduct. After years of litigation, the Court denied summary judgment, finding that sufficient evidence existed to create triable issues of fact that: (i) Health First (a) entered into agreements

that restrained trade within the relevant market, and (b) unlawfully maintained a monopoly within the relevant market. *See Omni*, Doc. 322, 2016 WL 4272164, *12-14, 20-22 (M.D. Fla. Aug. 13, 2016). While the settlement in the *Omni* case granted relief to certain physicians who had been injured by Health First's anticompetitive conduct, this case was brought to obtain relief for individuals, health plans, and groups such as unions that fund healthcare for their employees or members for similar conduct and to prevent the continuation of such conduct.

Plaintiffs filed their motion for class certification on May 20, 2022 (Doc. 96) and their reply in support of the motion on June 30, 2022 (Doc. 111). In between these two filings, Health First served Plaintiffs with a Rule 11 motion on June 14, 2022.

On December 22, 2022, this Court denied class certification (Doc. 154). While Health First had raised the same issues with respect to Mr. Colucci and Ms. Skipper's standing that it again raises in the Rule 11 Motion, along with other objections to standing and class certification, the Court declined to certify the class for another reason. As the Court stated, "[b]ecause neither Plaintiff seeks to recover for inpatient or emergency care treatment, and their claims fall outside the class's claims, they lack standing to bring these claims on behalf of the class." (Doc. 154 at 5.)

After unsuccessfully attempting to further amend the complaint to: (1) clarify the class definition / product market and (2) add a class representative who had received inpatient (overnight) or emergency care, Plaintiffs dismissed this case pursuant to stipulation with Health First on March 23, 2023 (Doc. 175). Health First filed its Rule 11 Motion on March 27, 2023 (Doc. 176).

## II.    LEGAL STANDARD

Health First's Rule 11 Motion is based on two of Rule 11's four substantive provisions. Health First claims that, by asserting that Mr. Colucci and Ms. Skipper had standing to represent the class in Plaintiffs' Second Amended Complaint and Motion for Class Certification, Plaintiffs had advanced "legal contentions" not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" pursuant to Rule 11(b), subsection (2). Health First also claims that the factual contentions about Mr. Colucci and Ms. Skipper's standing lacked "evidentiary support" pursuant to Rule 11(b), subsection (3).

"Rule 11 is intended to deter frivolous suits[.]" *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458 (11th Cir. 1987). It is "'not intended to chill an attorney's enthusiasm or creativity,'" *Omni*, 2017 WL 3658837, *5 (quoting Rule 11 advisory committee note to 1983 amendment), nor to suppress "innovative theories and vigorous advocacy." *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987). Attorneys should "feel free to exercise … judgment without fear of reprisals should his lawsuit miscarry. . . . [C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990).  Thus, while the Court may "disagree[] with Plaintiffs' legal theory, that alone cannot form a basis for sanctions under Rule 11." *See Peterson v. JPMorgan Chase Bank, NA*, 219 F. Supp. 3d 1195, 1197 (S.D. Fla. 2016). Likewise, the fact that Health First prevailed on the class

certification motion "is not sufficient to warrant sanctions against Plaintiff." *Salerno v. School Board of Volusia County, Florida*, No. 6:20-cv-1735-RBD-DCI, 2021 WL 2678126, \*3 (M.D. Fla., May 27, 2021).

Rule 11 is not a "combative tool" to be used to create a tactical advantage. *Autrey v. United States*, 889 F.2d 973, 986 n.20 (11th Cir. 1989). Rather, it is an "extraordinary remedy" to be "exercised with extreme caution." *Bigford v. BESM, Inc.*, No. 12-61215, 2012 WL 12886184, at \*2 (S.D. Fla. Oct. 12, 2012) (quotations omitted).

The Eleventh Circuit requires a two-party inquiry before Rule 11 sanctions are granted. "A court confronted with a motion for Rule 11 sanctions must first determine whether the claims raised are objectively frivolous and, if they are, whether the signer of the pleadings should have been aware of their frivolous nature." *Lee v. Mid-State Land & Timber Co., Inc.*, 285 F. App'x 601, 608 (11th Cir. 2008). Argument C below focuses on the first part of this analysis while the Declaration of R. Steve Berry ("Berry Decl.") focuses on the second part.

## III.   ARGUMENT

### A.   Imposing Rule 11 Sanctions Here Would be Contrary to the Overriding Purpose of Rule 11

While Rule 11 applies to all papers presented to the Court, in evaluating Health First's Rule 11 Motion, this Court should be guided by the underlying purpose of Rule 11. As both this Court and the Eleventh Circuit have stated, the fundamental purpose of Rule 11 "is to deter frivolous lawsuits." *Omni*, 2017 WL 3658837, \*5, *quoting Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

Here, the substantive allegations in this lawsuit were far from frivolous. Most of Plaintiffs' claims survived two motions to dismiss. Many of the factual and legal contentions in this lawsuit were based on the same factual and legal contentions that survived summary judgment in the *Omni* case and led to a settlement. And while this Court eventually held that Mr. Skipper and Ms. Colucci were not the proper parties to advance these meritorious claims, the same claims will continue to be litigated in *Powers v. Health First, Inc.*

As this Court reasoned in *Salerno* in denying defendant's Rule 11 motion, the plaintiff there had alleged sufficient facts "to indicate that her claim was not brought to harass Defendant, but rather to genuinely seek redress." 2021 WL 2678126, *3. Similarly, Plaintiffs here genuinely sought redress for Health First's anticompetitive conduct, for the benefit of all who have been or will be injured by that conduct.[1]

## B. Health First's Rule 11 Motion Contains No Evidentiary Basis to Award Attorneys' Fees

Health First seeks as a Rule 11 sanction "Health First's reasonable attorneys' fees and costs in connection with (1) this Motion for Rule 11 Sanctions …; (2) Plaintiffs' Motion for Class Certification ….; and (3) Plaintiffs' Second Amended

---

[1] Awarding attorneys' fees against Plaintiffs in this antitrust class action would also undermine the public policy expressed in the federal antitrust laws, which allow fee-shifting only in favor of plaintiffs. *See Bund v. ATP Tour, Inc.*, No. 07-178, 2009 U.S. Dist. LEXIS 97851, *11-12 (D. Del. Oct. 19, 2009) ("[T]he court recognizes the sound policy that underlines the … refusal to grant defendants accused of violating the federal antitrust laws the power to shift fees to plaintiffs who have in good faith brought an action to vindicate those laws" especially in light of "[t]he significant costs associated with bringing and prosecuting an antitrust case")

Class Action Complaint …, from the date that this Motion was served." (Doc. 176 at 1.) Health First, however, has provided no detail at all about these attorneys' fees and costs. Health First does not even provide the total amount sought.

In *Walther*, 2013 WL 5532683, this Court granted the defendants' Rule 11 motion and imposed defendants' attorneys' fees on plaintiffs as a sanction. In doing so, this Court as required by Eleventh Circuit precedent "utilize[d] a lodestar approach to calculate attorney's fees, whereby the court multiples [sic] the number of hours reasonably expended by a reasonable hourly rate." *Id.*, *4. As the Court noted, "[t]he movant bears the burden of establishing reasonableness" and this includes the "exercise of 'billing judgment' to exclude fees for 'excessive, redundant or otherwise unnecessary' work," and "'satisfactory evidence' that the hourly rate requested comports with 'the prevailing market rate in the relevant community.'" *Id.*

Health First has provided no information about what tasks it seeks attorneys' fees for, the amount of time devoted to such tasks, the extent to which it has exercised billing judgment, the hourly rate at which its attorneys performed these tasks, and how its claimed hourly rates compare to the prevailing market rates in this community. It has completely failed to meet its burden of establishing the reasonableness of its requested but unspecified fee award. The Rule 11 Motion, therefore, should be denied for a complete failure of evidentiary support. *See R.W. Int'l Corp. v. Welch Foods*, 133 F.R.D. 8, 12 (D.P.R. 1990) (denying award of attorneys' fees as sanction because "it would … be unjust to award attorney's fees and costs when the plaintiffs were not

allowed to make an informed opposition to the request for attorney's fees and costs");
*rev'd on other grounds,* 937 F.2d 11 (1st Cir. 1991).

While Health First may respond that it will provide this information later, it did
not request oral argument or an evidentiary hearing pursuant to Local Rule 3.01(h).
And a reply memorandum is not allowed as a matter of right. Local Rule 3.01(d). In
any event, it would be manifestly unfair to Plaintiffs and inefficient for the Court for
Health First to provide information about fees and costs in a reply or in a later
proceeding, where it could have and should have provided this information in its Rule
11 Motion.

Failure to provide any information at all about the attorneys' fees and costs
sought would be fatal to any motion seeking attorneys' fees, but it is particularly
troubling in a Rule 11 motion. Rule 11 only allows an award of the movant's attorneys'
fees for "reasonable attorney's fees and other expenses *directly resulting* from the
violation." Fed. R. Civ. Proc. Rule 11(c)(4) (emphasis added). *See also Bus. Guides, Inc.,
v. Chromatic Communs. Enters.*, 498 U.S. 533, 553 (1991) (Rule 11 sanctions do not
"shift the entire cost of litigation; they shift only the cost of a discrete event"). Health
First has provided no information by which this Court could determine what portion
of its attorneys' fees incurred after service of its Rule 11 Motion were caused by the
specific and narrow Rule 11 violations it claims occurred here. *See Patterson v. Aiken*,
841 F.2d 386, 388 (11th Cir. 1988) (district court could award Rule 11 sanctions as to
one count of a multicount complaint where it considered "itemized billings, a payment
check, calendar entries, time sheets, and prepared draft answers for each of the

individual defendants" such that "the effect and cost of that count could be separated from that of the other counts").

The evidence in the record indicates that a substantial portion of Health First's attorneys' fees incurred after service of the motion did not "directly result" from the claimed Rule 11 violations. Of the 14 pages of legal argument in its Opposition, only a few pages are devoted to whether Mr. Colucci and Ms. Skipper have standing and/or are adequate and typical class representatives because of the issues raised in the Rule 11 Motion. (Doc. 105 at 7-9 and 14-15.) Much of the opposition was devoted to issues that have nothing to do with Mr. Colucci and Ms. Skipper's individual circumstances, such as whether a class is ascertainable, whether a class can be certified in light of arbitration provisions with certain health care payors, and issues of expert methodology. (*Id.* at 9-12, 13, and 16-19.) And a review of the Court's docket will make clear that much of the activity between the service of the Rule 11 motion and dismissal related to discovery against Health First and third-parties, issues that have nothing to do with the alleged Rule 11 violations. *See also* attached Declaration of Jason H. Kim ("Kim Decl."), ¶¶ 5-9 (discussing the context and rationale for seeking to amend the complaint after the Court denied class certification and the alleged delay between denial of class certification and dismissal).

Awarding attorneys' fees for activities not specifically related to Mr. Colucci and Ms. Skipper is especially inappropriate here, because many of the same fees would have been incurred in litigating similar issues in *Powers v. Health First, Inc.* The fact that

this work has already been done in this action will doubtless save Health First attorneys' fees and costs in that action.

Health First has provided no evidentiary basis for a fee award, either under general lodestar principles or under the specific requirements of Rule 11. For this reason alone, the Rule 11 Motion should be denied.

### C.    Plaintiffs Did Not Violate Rule 11 in Any of the Filings Challenged by Health First

Plaintiffs had a reasonable basis for contending in the Second Amended Complaint ("SAC") and motion for class certification ("MCC") that Mr. Colucci's claims were typical of the class and that he had standing to represent the class despite the issues raised by Health First in its Rule 11 Motion.

Mr. Colucci directly paid Health First for monopoly-priced healthcare services. As Plaintiffs argued in the MCC, this was a reasonable basis to contend he was an adequate and typical class representative. (Doc. 96 at 5-6.) Mr. Colucci's family health plan covered the services his ex-wife received from Health First, and he was responsible for payment for those services. *Id. See also* Berry Decl., ¶ 8. He is not disqualified from serving as a class representative merely because his ex-wife received the relevant treatment for which he paid. *Cf. In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at *2 (S.D.N.Y. Jan. 23, 2013) (rejecting argument that plaintiffs were inadequate and atypical representatives of a class of structured note purchasers on the grounds "their spouses purchased the Notes" given that plaintiffs "invested in the Notes with money they share with their wives.").

This is an antitrust case, not a case challenging the quality of care received by patients at Health First. As the payor, he rather than his ex-wife was the proper plaintiff. It would be absurd to disqualify, for example, a health plan as a plaintiff in an antitrust case against a hospital because the health plan itself, as opposed to its members, did not receive any medical services from the hospital.

Health First has not provided any authority to the contrary, much less binding authority. *See Walter*, 2013 WL 5532683, at *3 (concluding that plaintiffs' legal position was not frivolous where contrary cases "were highly analogous" but "not directly controlling"). Rather, Health First points to the class definition in the SAC and motion for class certification that references Health First "patients." (Doc. 176 at 8.) But the same definition also references those who "purchase" the defined services from Health First. (Doc. 96 at 1.) At worst, this is inartful and ambiguous wording rather than sanctionable conduct.

And the fact that, when Mr. Colucci paid for the relevant services for his ex-wife, he had already exceeded the out-of-pocket maximum for the year is irrelevant to whether Plaintiffs violated Rule 11 as to the SAC because Mr. Colucci was not offered as a class representative for the damages class in the SAC–only Ms. Skipper was. (Doc. 53 at ¶ 126). As a representative of the injunctive class, the relevant issue is whether he would expect to incur out-of-pocket costs in the future that would be within the out-of-pocket maximum, not whether he had incurred such costs in the past. This is consistent with his deposition testimony cited by Health First in which he disclaimed any individual damages. (Doc. 176 at 9.) *See also* Berry Decl., ¶ 8.

12

Although Mr. Colucci was offered as a representative of the damages class in the MCC, as that motion made clear, he was seeking damages only on behalf of the Brevard Public School's health plan, not on his own behalf. (Doc. 96 at 5.) The relevant facts as to Mr. Colucci's co-insurance payments were fully disclosed in the MCC. (Doc. 96 at 5.)  There is no basis to find that Plaintiffs made any groundless statement of fact as to Mr. Colucci.

Similarly, Plaintiffs had a reasonable basis in fact and law for contending that Ms. Skipper was a typical and adequate class representative despite the partial payment issue raised in the Rule 11 Motion. The discounts she negotiated with Health First to satisfy portions of her uncapped co-insurance bills did not negate her antitrust injury or disqualify her from class membership. (Doc. 111 at 4.)

Like other patients in the class, Health First billed Ms. Skipper for her co-insurance portion of monopoly-priced healthcare services, and she satisfied those uncapped bills *in full* (which Health First does not dispute). Ms. Skipper satisfied the "full amount" of her uncapped co-insurance bills: one portion in dollars, the other with a negotiated discount.

And while Health First challenges the statements in footnotes 6 and 7 that "[h]er coinsurance paid for these services was $2,193.90," "[s]he paid this co-insurance this year," and "Plaintiff Skipper paid the full amount of $633.93," Plaintiffs provided citations for these facts from her April 1, 2022 deposition testimony, the relevant excerpts of which were provided to the Court. (Doc. 96 at 5, notes 6 and 7.) This testimony substantiates these factual statements.

With respect to the first $2,193.90 payment, Ms. Skipper unambiguously testified that she had paid it:

Q: And outstanding balance, $2,093.91?

A: Correct.

Q: Is that still outstanding?

A: No

Q: When was that paid?

A: That was paid using my FSA money this year.

Kim Decl., Ex. A, Skipper Dep., 112:10-15.

Her testimony is equally clear as to the second $633.93 payment:

Q: So if we look to the column to the right, $633.93 as it's listed here as an outstanding balance –

A: Yeah.

Q: -- you have now paid that?

A: Yes.

Q: And when did you pay that?

A: I know there were several things I settled this year and a couple years ago, but I don't know which ones that it was, because I actually thought that this one was settled, and then I was told that it wasn't, but I believe that I paid it, at least according to my Flexible Spending Account I have.

Kim Decl., Ex. A, Skipper Dep., 109:16-110:2. *See also* Berry Decl., ¶ 4.

Sworn deposition testimony by a client is a reasonable basis for factual assertions in a brief. *See Omni*, 2017 WL 3658837, *5 ("reasonable inquiry" includes "whether the attorney relied on a client for information"). And Plaintiffs in their reply for the MCC (which was filed within Rule 11's 21-day safe harbor period) did not

dispute Ms. Skipper had received the discounts; rather, they reasonably disputed the relevance of the discounts to her standing. (Doc. 111 at 4.) *See also* Berry Decl., ¶ 5.

As Ms. Skipper's testimony revealed, during the relevant time period, she underwent numerous medical procedures, some of which are included in this case and some of which are not, and paid various amounts to doctors, hospitals, and collection agencies for these services. Kim Decl., Ex. A, Skipper Dep., 108:2—112:15. Understandably, as she testified, the payments have "all run together, so I don't recall enough to tell you specific amounts or dates or where." *Id.* at 108:14-17. And while Ms. Skipper did not reference the discounts during her deposition, she cannot reasonably be faulted for not adding "after discounting" to her testimony that she paid her bills.

Relatedly, the fact that Ms. Skipper paid the bills at issue in February 2022, after Plaintiffs filed their SAC but before they filed the MCC, does not warrant sanctions. (Doc. 176 at 10-11.) When Ms. Skipper filed the complaints in this action, she had the mistaken understanding that she had already paid the Health First bills at issue. As she testified during her deposition, she was confused as to when and what for she had paid Health First: "there were several things I settled this year and a couple years ago, but I don't know which ones that it was, because I actually thought that this one was settled, and then I was told that it wasn't, but I believe that I paid it . . . ." Kim Decl., Ex. A, Skipper Dep. at 109:22—110:2. Thus, Ms. Skipper thought that she had paid the relevant bills "a couple years ago," *i.e.*, before filing the original complaint in April 2021 and the SAC in August 2021. *See Nat'l Union Fire Ins. Co. v. All AM. Freight, Inc.*,

No. 14-CW-62262-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 124218, *16 (S.D. Fla. Sept. 12, 2016) (subsequent contrary evidence is "insufficient to establish that counsel failed to make a reasonable inquiry at the time of the Amended Complaint to warrant Rule 11 sanctions"). In any event, as Health First admits, Ms. Skipper satisfied the bills in full in February 2022, before Plaintiffs filed the MCC.

Ms. Skipper's status as a class member is not negated by Dr. Gale's deposition testimony. (Doc. 176 at 12, citing Gale Dep. at 52:16-53:6 and 53:19-54:9.) First, his testimony about a hypothetical patient that "has a percentage-based payment obligation and pays 50 percent and then ceases making payments," does not apply to Ms. Skipper because she satisfied her bill in full and did not "cease making payments." To the extent Health First attaches significance to the fifty percent figure, as Health First admits, Ms. Skipper received only a *twenty percent* discount on the 2020 procedure for which she was billed $2,193.90. (Doc. 105 at 4.)

Second, Dr. Gale testified that "it's hard to argue that someone who didn't pay their bill overpaid." This does not apply to Ms. Skipper because she satisfied her bills for both acute care procedures, including a substantial cash payment for eighty percent of the 2020 procedure.

Third, Dr. Gale testified that a class member would have to make a "complete payment." This testimony is at best ambiguous as applied to a class member who made a "complete payment" after a negotiated discount: there is no reason a class member who received a negotiated discount off a supracompetitive price should be excluded from the class. Every health insurer that contracts with a hospital or other health

16

provider receives a negotiated discount. In a "but-for" world, it is reasonable to assume the same discount would have been negotiated on a lower, competitive price and the negotiated discount therefore would go to the amount, but not the existence, of antitrust injury. *See* Declaration of John Gale, ¶ 3.

Finally, if as Health First claims, the factual and legal contentions relating to Mr. Colucci and Ms. Skipper were so clearly lacking in merit as to warrant sanctions, this Court should have disposed of the MCC for the reasons set forth in the Rule 11 Motion. Instead, while the Court in passing referenced these issues, the Court ultimately denied class certification on another basis: "[b]ecause neither Plaintiff seeks to recover for inpatient or emergency care treatment, and their claims fall outside the class's claims, they lack standing to bring these claims on behalf of the class." (Doc. 154 at 5.) In reaching this conclusion, the Court carefully considered the language in the SAC, precedent defining "in-patient" services, and voluminous discovery correspondence between the parties. (*Id.* at 4-5.) This would not have been necessary if it were so obvious that Mr. Colucci and Ms. Skipper lacked standing for the reasons set forth in the Rule 11 Motion.

Health First does not challenge under Rule 11 Plaintiffs' core legal contention that Mr. Colucci and Ms. Skipper were appropriate class representatives because: (1) Mr. Colucci's ex-wife (except for the fact that the services were not provided to Mr. Colucci personally) and Ms. Skipper received acute outpatient care at Health First hospitals and (2) the relevant antitrust product market includes hospital-based outpatient acute care services. Nor could it, in light of precedent that has approved the

17

very same product market Plaintiffs asserted here: a hospital-based "acute care" market that includes outpatient services. *See Doctors Hosp. v. Southeast Medical Alliance*, 889 F. Supp. 879, 889 (E.D. La. 1995) (accepting product market definition of "acute care, inpatient and hospital based ***outpatient*** services") (emphasis added); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 527 F. Supp. 2d 1257, 1266 (D. Kan. 2007) (denying summary judgment on antitrust claims against hospitals premised on a product market of "hospital-based inpatient and ***outpatient*** acute care services") (emphasis added). To the extent Plaintiffs erred, it was not by advancing an unfounded contention of antitrust law; rather, it was for using unclear language in their complaint. Rule 11 reaches the former but not the latter.

Health First has not established any sanctionable conduct by Plaintiffs or their counsel here. Plaintiffs' factual and legal contentions as to Mr. Colucci and Ms. Skipper's standing to represent the class were well-grounded at the time they were made and based on adequate investigation. While class certification was denied, sanctions are not proper for a motion for class certification unless the challenged conduct is "egregious." *Fox v. Ritz-Carlton Hotel Co., LLC*, No. 17-CV-24284-COOKE, 2022 U.S. Dist. LEXIS 126989, *15 (S.D. Fla. July 18, 2022) ("even if the Court ultimately determines that the class certification motion lacks merit … that in itself, does not warrant Section 1927 sanctions. Rather, counsel's conduct in pursuing the motion must be egregious."). There is no showing of such conduct here.

**D.      The Rule 11 Motion Should be Denied to the Extent Health First Seeks its Attorneys' Fees**

Under Rule 11, "[a] sanction under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. Proc. Rule 11(c)(4). The moving party's attorneys' fees may only be awarded as sanctions if "warranted for effective deterrence." *Id.* Rule 11 does not shift attorneys' fees automatically and a moving party has no entitlement to its attorneys' fees. *Bus. Guides,*, 498 U.S. at 553 ("The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter filings and curb abuses.")  And according to the 1993 Advisory Committee Notes on Rule 11, sanctions "should ordinarily be paid into court as a penalty" and only under "unusual circumstances" will attorneys' fees paid to the opposing party be a necessary deterrent, especially where, as here, a subdivision (b)(1) violation (improper purpose filings) is not at issue.

While no sanction under Rule 11 is justified here, Health First has not shown why payment of its attorneys' fees is necessary to deter the conduct about which it complains. The fact that Plaintiffs' motion for class certification was denied, ending this otherwise meritorious case, is itself effectively a sanction. In light of Health First's failure to make an adequate showing as to its entitlement to attorneys' fees (both as to amount and whether an award of such fees is necessary at all), it would be a misuse of "scarce judicial resources" for this Court to do Health First's work for it in a case that has already been dismissed. *See Kramer v. Pollack-Krasner Found.*, 890 F. Supp. 250, 259 (S.D.N.Y. 1995).

And although Rule 11 does not have a compensatory purpose, the attorneys' fees sought here would likely *overcompensate* Health First. Much of the work for which it appears Health First seeks attorneys' fees are: (1) unrelated to the claimed Rule 11 violations and (2) will be equally relevant to defense of the *Powers* case. *See Reynolds v. Metro Life Ins. Co.*, No. 3:04-232, 2007 U.S. Dist. LEXIS 30910, *8-9 (W.D. Pa. April 25, 2007) (reducing requested attorney fee award where "[e]ven without the Rule 11 violations, MetLife still would have had to pursue this matter through summary judgment").

Finally, in considering against whom (if anyone) sanctions should be awarded, the Court should consider the limited role played by local counsel, Byrd Campbell, P.A. and Meyer Blohm & Powell, P.A. *See* Fed. R. Civ. Proc. Rule 11 (an "appropriate sanction" can be imposed on a law firm that "violated the rule or is responsible for the violation"); Kim Decl., ¶ 10.

## IV.    CONCLUSION

For the reasons set forth above, Health First's Rule 11 Motion should be denied.

Dated: April 10, 2023.

s/ *Jason H. Kim*
Jason H. Kim
*(Admitted Pro Hac Vice)*
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkim@schneiderwallace.com

R. Stephen Berry
*(Admitted Pro Hac Vice)*
BERRY LAW PLLC
1100 Connecticut Avenue NW, #645
Washington, DC 20036
Telephone: (202) 296-3020
Facsimile: (202) 296-3038
sberry@berrylawpllc.com

Tucker H. Byrd
(Florida Bar No. 381632)
BYRD CAMPBELL, P.A.
180 Park Avenue North, Suite 2A
Winter Park, FL 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
TByrd@ByrdCampbell.com

Ronald G. Meyer
Florida Bar No. 0148248
MEYER AND BLOHM, P.A.
Post Office Box 1547
Tallahassee, FL 32302
Telephone: (850) 878-5212
rmeyer@meyerblohmlaw.com

*Attorneys for Plaintiffs*