# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| ANTHONY COLUCCI, VANESSA LORRAINE SKIPPER, Individually and on Behalf of Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH FIRST, INC.,<br><br>Defendant. | No. 6:21-cv-00681-RBD-GJK |

## DECLARATION OF JASON H. KIM IN OPPOSITION TO HEALTH FIRST, INC.S MOTION FOR RULE 11 SANCTIONS

I, Jason H. Kim, declare as follows:

1. I am an attorney and member of the State Bars of California and Hawaii. I am admitted *pro hac vice* in this matter and represent Plaintiffs Anthony Colucci and Vanessa Skipper ("Plaintiffs"). I submit this declaration in opposition to Health First, Inc.'s ("Health First") Motion for Rule 11 Sanctions ("Rule 11 Motion"). I have personal knowledge of the matters set forth below and could and would testify competently if called to do so.

2. I am a partner in the law firm of Schneider Wallace Cottrell Konecky LLP ("SWCK"). I am managing partner of SWCK's Los Angeles office and lead the

firm's Business Litigation and Competition practice group. I am the partner responsible for SWCK's involvement in this matter.

3. I am a 1998 graduate of Harvard Law School and have close to 25 years of litigation experience. Prior to joining SWCK, I was an associate and counsel at O'Melveny & Meyers in Los Angeles, California, and Alston Hunt Floyd & Ing (now Denton's) in Honolulu, Hawaii. I also served as a Deputy Prosecuting Attorney for the City and County of Honolulu.

4. While the Rule 11 Motion does not claim that Plaintiffs' motion for leave to file an amended complaint (Doc. 157) was filed in violation of Rule 11, Health First is apparently claiming attorneys' fees for its work in responding to the motion. Health First also states (although this does not appear to be directly relevant to the Rule 11 Motion, which was served long before Plaintiffs sought to amend their complaint) that "[e]ven after the Court denied their Class Motion (Doc. 154), Plaintiffs did not immediately seek to dismiss their claims and instead sought to amend the SAC to expand the product market and add a new Plaintiff." (Doc. 176 at 2, n. 2.) This motion was not related to the claimed Rule 11 violations and was not brought vexatiously to cause unnecessary expense to Health First.

5. Upon service of this Court's order denying class certification (Doc. 154), Plaintiffs' counsel contemplated appeal of that order, either on an interlocutory basis or after final dismissal. One issue for the contemplated appeal would have been whether Plaintiffs should have been allowed to amend their complaint to cure the class standing deficiencies identified by the Court in denying class certification.

6. At this time, I believed I was professionally obligated to take all reasonable measures to amend the complaint to cure the deficiencies identified by the Court, despite the passage of the deadline to amend the complaint, and to posture this case for appeal in the most favorable way possible for my clients and the putative class. To the latter end, I believed that adding the proposed amended complaint to the district court record would be of value to the appeals court. Rather than evaluating whether the Court should have allowed amendment in the abstract, the appeals court would have the actual proposed amendment to consider. The appeals court would also know that Plaintiffs' counsel had proposed adding a new class representative with class standing so the case could go forward.

7. The proposed amendment was intended to cure the primary reason for denial of class certification, that the Court deemed Plaintiffs' Second Amended Complaint to only allege antitrust claims relating to Health First's inpatient and emergency room services and that Mr. Colucci and Ms. Skipper had not received such services. They were not aimed at the alleged Rule 11 violations as to Mr. Colucci and Ms. Skipper that are the subject of the Rule 11 Motion.

8. The primary reason for the delay between the Court's order denying amendment on February 7, 2023 and Plaintiffs' dismissal on March 23, 2023 was settlement discussions between the parties. On February 21, 2023 I tendered a written settlement offer to Ms. Honkonen. The week before, I had made the same offer over the telephone. Ms. Honkonen formally rejected the offer on March 3, 2023. Ms.

Honkonen and I then promptly began a dialogue about a stipulated dismissal, as reflected in the Joint Status Report filed on March 10, 2023.

9. Ultimately, Plaintiffs dismissed this action by stipulation, thus mooting any appeal. While the attorney-client privilege prevents me from explaining the rationale for that decision, I can state that Plaintiffs' decision to voluntarily terminate this action and forego appeal once it was clear that no settlement would be reached was made shortly before the filing of the parties' Joint Status Report on March 10, 2023, two months after Plaintiffs filed their motion for leave to amend and one month after the Court had denied that motion.

10. SWCK and Berry Law PLLC engaged the local law firm of Byrd Campbell, P.A., as local counsel, primarily to assist in complying with the Middle District's Local Rules and practices. Meyer Blohm & Powell, P.A. was also local counsel but focused on liasing with Plaintiffs. The responsibility for handling substantive factual and legal issues primarily lay with SCWK and Berry Law PLLC.

11. Attached as Exhibit "A" to this Declaration are true and correct excerpts of the transcript of the deposition of Vanessa Skipper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of April, 2023 at Los Angeles, California.

*Jason H. Kim*
Jason H. Kim

# EXHIBIT A

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:21-CV-00681-RBD-GJK

ANTHONY COLUCCI and VANESSA
LORRAINE SKIPPER,

     PLAINTIFFS,

V.

HEALTH FIRST, INC.,

     DEFENDANT.

* * * * * * * * * * * * * * * * * * * * * * * * *

VIDEOTAPED DEPOSITION OF VANESSA LORRAINE SKIPPER
TAKEN ON BEHALF OF DEFENDANT
HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

APRIL 1, 2022

COMMENCED AT: 10:04 A.M.
CONCLUDED AT: 2:47 P.M.
1670 S. FISKE BOULEVARD
ROCKLEDGE, FLORIDA 32955

STENOGRAPHICALLY REPORTED BY:
LISA M. FITZGERALD
COURT REPORTER AND NOTARY PUBLIC

* * * * * * * * * * * * * * * * * * * * * * * * *

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 108

1    A    No, I was not.
2    Q    Now, if we go to the far right of this
3  spreadsheet, there's a "patient payment" column.  Do you
4  see that?
5    A    Uh-huh.
6    Q    And the amount for the service on November 11,
7  2017 reflects a patient payment of $454.88.  Do you see
8  that?
9    A    Yes.
10   Q    Okay.  Did you pay that full amount?
11   A    I believe I did.  There's some money that was
12 paid with the -- and I'm not sure -- some was paid to
13 the hospital -- or to the doctor directly, some to the
14 hospital, some to collections agency, but there's
15 different ones, and they've all run together, so I don't
16 recall enough to tell you specific amounts or dates or
17 where.
18   Q    But you believe that you paid the full amount
19 that was due and owing for that procedure?
20   A    I believe that I did.
21   Q    Let's go up to the next service, which is
22 dated 12/27/2017.  Do you see that?
23   A    I do.
24   Q    What service was that?
25   A    The 12/27/2017?

1  Q   Yes.
2  A   That was a biopsy of nodules in my thyroid.
3  Q   Where did that service take place?
4  A   That took place at Cape Canaveral Hospital.
5  Q   And if we scroll across to the "patient
6  payment" column, do you see that?
7  A   Yes.
8  Q   There's a zero that's for that?
9  A   For the 12/27, the patient payment?
10 Q   Yes.
11 A   Uh-huh.
12 Q   Does that coincide with your recollection of
13 what your patient payment was for that procedure?
14 A   I believe that this account has been settled,
15 and I believe I did pay it.
16 Q   So if we look to the column to the right,
17 $633.93 as it's listed here as an outstanding balance --
18 A   Yeah.
19 Q   -- you have now paid that?
20 A   Yes.
21 Q   And when did you pay that?
22 A   I know there were several things I settled
23 this year and a couple years ago, but I don't know which
24 ones that it was, because I actually thought that this
25 one was settled, and then I was told that it wasn't, but

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 110

1  I believe that I paid it, at least according to my
2  Flexible Spending Account I have.
3      Q    If this was a payment that was made this year,
4  is there something in particular that prompted you to
5  make this payment this year?
6      A    I started a Flexible Spending Account that
7  allowed me to have that much money available at once.
8      Q    Let's go up to the next service, which is
9  July 9, 2020.  Do you see that?
10     A    I see that.
11     Q    And what was that service?
12     A    That was a vaginal ultrasound.
13     Q    Where did that service take place?
14     A    That took place -- I'm not sure what it's
15 called, but it's the facility on Merritt Island that
16 used to have the Healthplex in it, so the health --
17 that's where Dr. VJ's office used to be.  I don't
18 believe it's there anymore.  But now they house -- they
19 got rid of the gym, and they house I guess radiology
20 services and other services there.
21     Q    To your understanding is that facility a
22 Health First facility?
23     A    That facility is a Health First facility.
24     Q    Is it a hospital?
25     A    It is not a hospital.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 111

1  Q   And if we move over again to the far right, do
2  you see a patient payment of $868.54?
3  A   Uh-huh.
4  Q   Is that a payment that you made?
5  A   I believe I made that to a collection agency.
6  Q   And when did you make that payment?
7  A   Your notes on here says 4/13.  I would have
8  to -- I would have to look at credit cards.  I don't
9  know.
10 Q   Does that seem correct to you?
11     MR. BERRY:  She said she doesn't know.
12     THE WITNESS:  Yeah.
13 BY MS. HONKONEN:
14 Q   All right.  Let's go up to the top line, the
15 one that has the yellow highlighting.
16 A   Okay.
17 Q   Date of service of November 20, 2020.  Do you
18 see that?
19 A   Uh-huh.
20 Q   And can you describe what that procedure was?
21 A   Sure.  That was an endometrial ablation.
22     MR. BERRY:  Lisa, do you need any help?
23     THE COURT REPORTER:  I'm fine, thanks.
24     MR. BERRY:  I do.
25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 112

1   BY MS. HONKONEN:
2        Q    And where did that procedure occur?
3        A    That procedure occurred at Cape Canaveral
4   Hospital.
5        Q    Go to the far right under "patient payment."
6   It shows $100.
7        A    Uh-huh.
8        Q    Is that correct?
9        A    Correct.
10       Q    And outstanding balance, $2,093.91?
11       A    Correct.
12       Q    Is that still outstanding?
13       A    No.
14       Q    When was that paid?
15       A    That was paid using my FSA money this year.
16       Q    Now, if we look at all five of the procedures
17  that are listed here under your name, excluding Roger
18  and Ryan --
19       A    That's good.
20       Q    -- can you go procedure by procedure and tell
21  me which procedures do you understand you are seeking
22  relief for in connection with the damage Class?
23       A    It would be the procedures, the endometrial
24  ablation.
25       Q    That's the one on November 20, 2020?

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 171

1  REPORTER'S DEPOSITION CERTIFICATE
2
3  STATE OF FLORIDA    )
4  COUNTY OF BREVARD   )
5
6  I, LISA M. FITZGERALD, certify that I was
7  authorized to and did stenographically report the
8  foregoing videotaped deposition of VANESSA SKIPPER;
9  that a review of the transcript was requested; and
10 that the transcript is a true and complete record of
11 my stenographic notes.
12 I further certify that I am not a relative,
13 employee, attorney, or counsel of any of the
14 parties, nor am I a relative or employee of any of
15 the parties' attorneys or counsel connected with the
16 action, nor am I financially interested in the
17 action.
18 Dated this 8th day of April, 2022.
19
20
21                          *Lisa Fitzgerald*
22                    _____
23                    LISA M. FITZGERALD
24                    Court Reporter & Notary Public
25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 172

CERTIFICATE OF OATH

STATE OF FLORIDA    )
COUNTY OF BREVARD   )

    I, the undersigned authority, certify that VANESSA SKIPPER personally appeared before me and was duly sworn.

    WITNESS my hand and official seal this 8th day of April, 2022.

*Lisa Fitzgerald*

_____

Lisa M. Fitzgerald
Notary Public - State of Florida
My Commission No.: GG 963802
Expires: April 8, 2024